# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Nicholas D. Aune                                  Civil No. 09-0015 (JNE / SRN)

        Plaintiff,

        v.                                  <u>REPORT & RECOMMENDATION</u>

Cal Ludeman, Commissioner, Minnesota
Department of Human Services; Dr.
Sanne Magnan, Commissioner,
Minnesota Department of Health;
Scott Leitz, Assistant Commissioner,
Minnesota Department of Health;
Dennis Benson, Chief Executive Officer,
Minnesota Sex Offender Program,

        Defendants.

---

Nicholas D. Aune, 1111 Highway 73, Moose Lake, Minnesota 55101, Pro Se

Ricardo Figueroa, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, Minnesota 55101, for Defendants.

---

This matter comes before the undersigned United States Magistrate Judge on Defendants' Motion for Judgment on the Pleadings (Doc. No. 23). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a).

## I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff, a patient civilly committed to the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota, pursuant to Minn. Stat. 253F.02, Subd. 18(c), commenced this action in January 2009. Plaintiff seeks relief under Section 1983 for alleged violations of his federal constitutional rights stemming from facility overcrowding, specifically double-bunking

conditions in the MSOP main building, where he resides.[1]  Plaintiff's Complaint seeks a finding

that his federal rights have been violated, as well as damages.  (Complaint, Prayer for Relief,

Doc. No. 1.)  Defendants are Cal Ludeman, Commissioner of the Minnesota Department of

Human Services; Dr. Sanne Magnan, Commissioner of the Minnesota Department of Health,

Scott Leitz, Assistant Commissioner of the Minnesota Department of Health, and Dennis

Benson, Chief Executive Officer of the MSOP.

Plaintiff contends that Defendants violated this Fifth, Eighth and Fourteenth Amendment

rights when, after receiving a waiver from the Minnesota Department of Health, the MSOP

assigned roommates to Plaintiff and other patients living in the MSOP Moose Lake main

building for a temporary period while awaiting the completion of a 400-bed facility under

construction.  Specifically, Plaintiff complains of conditions resulting from facility overcrowding

and double-bunking, including the following:  a reduction in the amount of activities and time

spent outside of his room (Complaint ¶ 12); a likelihood of decreased work for pay opportunities

in light of MSOP's expanding population (id.); more limited activities outside of patients'

rooms; more need for controlled movement of patients, leading to a more "prison-like"

environment, including a 9:45 curfew (Complaint ¶¶ 25; 28; 31); restrictions in amounts and

types of personal property in light of space constraints and the requirement that personal

belongings fit into plastic storage bins (Complaint ¶¶ 13,18); waiting lines and limitations

concerning the use of shared facilities including showers, day areas, telephones, computers,

electrical outlets and power strips (Complaint ¶¶ 14-15; 23; 30; 32); limited personal storage

space (Complaint ¶ 15); foul in-room odors caused by use of the toilet and wet towels

---

[1] "Double-bunking," also known as "double-celling,"is the practice of placing two
inmates in one room.  In Plaintiff's particular case, the beds are also bunk beds.

(Complaint ¶¶ 16, 17); general inability to use the in-room toilet due to privacy concerns (Complaint ¶ 22); antiquated, unsanitary toileting practices (Complaint ¶ 27); insufficient work space for treatment assignments, legal work and personal letters (id.); poor sleep and morale due to anxiety caused by sharing a room with a committed sex offender (Complaint ¶ 19); limited opportunity for personal and spiritual reflection (Complaint ¶ 20); lack of privacy (Complaint ¶ 21); inadequate visiting room capacity (Complaint ¶ 29); movement to protective isolation if double-bunking is refused (Complaint ¶ 34); and random security rounds, leading to increased stress and anxiety (Complaint ¶ 35).

Unrelated to double-bunking, the Complaint also alleges that Defendant Benson is biased toward using MINNCOR, a company used by the Department of Corrections ("DOC") to employ inmates, for the provision of any goods and services (Complaint ¶13); that MSOP has removed certain medications, including sleep aids and acid reflux medications (Complaint ¶ 19); that MSOP has hired former DOC officials and employees (Complaint ¶ 25); that MSOP has implemented a use of force policy modeled on the DOC's policy (Complaint ¶ 33); and that Plaintiff fears retaliation for filing the Complaint (Complaint ¶ 37).

Plaintiff alleges that Defendants were personally involved in the deprivation of his Fifth, Eighth and Fourteenth Amendment rights as follows: (1) Defendant Benson, CEO of the MSOP, knowingly requested waivers from the Minnesota Department of Health ("MDH"), allowing the MSOP to double-bunk patients; (2) Defendant Ludeman, Commissioner of the Department of Human Services ("DHS") is responsible for the overall operations of the MSOP; and (3) Defendants Magnan and Lietz, MDH Commissioner and Assistant Commissioner respectively, granted the waivers that allowed the MSOP to double-bunk patients.

Defendants move for judgment on the pleadings on the following grounds: (1) the State

has not waived its Eleventh Amendment immunity against Defendants sued in their official capacities, therefore the Court lacks subject matter jurisdiction; (2) Plaintiff's conditions of confinement do not amount to "punishment," and thus do not violate the Fourteenth Amendment; (3) Plaintiff's equal protection claims under the Fourteenth Amendment fail as a matter of law; (4) Plaintiff's Eighth Amendment claims are inapplicable to civilly committed patients and fail as a matter of law; (5) Plaintiff's Fifth Amendment due process claims are inapplicable to the actions of state officials; and (6) Plaintiff lacks standing sufficient to bring constitutional claims, or alternatively, has failed to state a claim upon which relief may be granted as to his remaining allegations.

## II.    DISCUSSION

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment after the pleadings are closed, but early enough not to delay trial.  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law."  Faibisch v. University of Minnesota, 304 F.3d 797, 803 (8th Cir. 2002) (citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)).  The Court reviews a Rule 12(c) motion under the same standard that governs 12(b)(6) motions.  EEOC v. Northwest Airlines, Inc., 216 F.Supp.2d 935, 937 (D. Minn.2002); Black v. United States, 900 F.Supp. 1129, 1135 (D. Minn.1994).

In considering a Rule 12(b)(6) motion to dismiss, "we must assume that all the facts alleged in the complaint are true" and generally construe the complaint in the light most favorable to the plaintiff.  E.g., Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).  "The complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal," DuBois v. Ford Motor Credit Co., 276 F.3d 1019,

1022 (8th Cir. 2002), and must contain enough facts to state a claim for relief "that is plausible on its face." Ashcroft v. Iqbal, __ U.S. __ (2009); 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although pro se complaints, "however inartfully pleaded," are to be held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), "a district court should not assume the role of advocate for the pro se litigant," nor may a district court "rewrite a [complaint] to include claims that were never presented," Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999) (quotations omitted), cited with approval in Palmer v. Clarke, 408 F.3d 423, 444 n.15 (8th Cir. 2005).

In general, the Court may not consider materials outside the pleadings on a motion to dismiss. However, when considering a motion for judgment on the pleadings or a motion to dismiss under Rule 12(b)(6), a court may consider some materials that are part of the public record or do not contradict the complaint. Faibisch, 304 F.3d at 802; Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999), cert. denied, 527 U.S. 1039 (1999), as well as materials that are "necessarily embraced by the pleadings." Piper Jaffray Cos. v. National Union Fire Ins. Co., 967 F.Supp. 1146, 1152 (D. Minn. 1997). See also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, at 199 (1990) (court may consider 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint'). Because Plaintiff refers to the Greg Carlson Affidavit in Paragraph 11 of the Complaint, providing a citation to the document, the Court views that document as embraced by the pleadings.[2] Although Plaintiff did not attach a copy of the Carlson

---

[2] At the time of the original filing of the Carlson Affidavit in November 2008, Mr. Carlson was the MSOP Director. (Carlson Aff. ¶ 1.)

Affidavit to the Complaint, he provided a citation to the Affidavit, filed with the Minnesota Court of Appeals in <u>Hince v. Ludeman</u>, A08-1868 (Complaint at 8, n. 4) and Defendants, in their responsive pleadings, filed a copy of the Carlson Affidavit. (<u>See</u> Aff. of R. Figueroa, attaching Carlson Aff., Doc. No. 25.) The Court thus views the Carlson Affidavit as an exhibit to the pleadings, as the Complaint explicitly cites to it, Defendants attached it as an exhibit to the instant motion and its authenticity is not questioned. <u>See</u> Fed. R. Civ. P. 10(c) (stating "a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.") Therefore, the Court will consider Plaintiffs' Complaint and the Carlson Affidavit in considering Defendants' Motion for Judgment on the Pleadings.

### A. Eleventh Amendment

Plaintiff has sued Defendants in both their individual and official capacities and seeks compensatory and punitive damages. (Complaint ¶¶ 4-7, Prayer for Relief.) To the extent the Complaint asserts claims against Defendants for actions taken in their official capacities under 42 U.S.C. § 1983, the claims must be dismissed with prejudice. The Eleventh Amendment grants a state immunity from suits brought in federal court by its own citizens, as well as citizens of another state. U.S. Const. Amend. XI; <u>Edelman v. Jordan</u>, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1005 (8th Cir. 1999). A state, however, can waive its Eleventh Amendment immunity. <u>Alsbrook</u>, 184 F.3d at 1005. A suit against a government official in his or her official capacity is considered a suit against the entity of which the officer is an agent. <u>Baker</u>, 501 F.3d at 925 (citing <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 690 n. 55 (1978)). The law is clear that, "the real party in interest in an official capacity suit is the governmental entity and not the named official." <u>Baker</u>, 501 F.3d at 925 (quoting <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1999)).

The Complaint alleges violations of 42 U.S.C. § 1983, the federal civil rights statute that allows citizens to seek relief for alleged violations of their federal constitutional rights. It is well-settled that in a 42 U.S.C. § 1983 action, the Eleventh Amendment precludes an award of money damages against a state official acting in his or her official capacity. Will v. Mich. Dept. of State Police, 491 U.S. 58, 66-67 (1998); Edelman, 415 U.S. at 662-63; Larson v. Kemper, 414 F.3d 936 (8th Cir. 2005). A plaintiff may maintain an action against a government official if the complaint seeks only injunctive or prospective relief. Edelman, 415 U.S. at 663; Grand River Enterprises Six Nations, Ltd. v. Beebe, 467 F.3d 698, 701-02 (8th Cir. 2006).

Plaintiff seeks both monetary damages and injunctive relief. (Complaint, Prayer for Relief). The State of Minnesota has not waived its immunity and consented to be sued in this case. Under the Eleventh Amendment, Plaintiff cannot maintain his § 1983 action against the Defendants in their official capacities to the extent he is seeking monetary damages. Such claims against Defendants are barred by the Eleventh Amendment and, therefore, it is recommended that they be dismissed with prejudice.

**B.     Constitutional Claims**

Plaintiff claims that Defendants violated 42 U.S.C. § 1983, which prohibits a person acting under color of state law from depriving another person of his or her "rights, privileges, or immunities secured by the Constitution and laws." Section 1983 itself is not "a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). The Court therefore addresses the constitutional rights cited in the Complaint which Plaintiff alleges Defendants have violated.

### 1.     Fourteenth Amendment Due Process Rights

Plaintiff's predominant claim is that the double-bunking practices at MSOP violate his due process rights under the Fourteenth Amendment and right to be free from cruel and unusual punishment under the Eighth Amendment.  He asserts other claims, describing restrictions on personal property, limitations on access to common spaces, unsanitary toilets and increased security rounds, all of which relate to MSOP's practice of double-bunking patients and to facility overcrowding.

A challenge to the conditions of a civilly committed patient is analyzed under the Due Process Clause. Youngberg v. Romeo, 457 U.S., 307, 315-17 (1982).  Youngberg establishes that the due process rights of the civilly committed are "at least as extensive" as the Eighth Amendment "rights of the criminally institutionalized," therefore, courts have held that "relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed."   Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir.1996).

In addressing a civilly committed patient's conditions of confinement claim, a court must first determine whether the officials in question acted with an intent to punish the patient.  Bell v. Wolfish, 441 U.S. 520, 561 (1979).  If the court finds that the officials were not acting with an intent to punish, the court then determines whether the restrictions or practices constitute punishment, which requires an analysis of whether the restrictions or practices are rationally related to a legitimate governmental purpose and whether they appear excessive in relation to that purpose. Id.

In Bell, pretrial detainees and prisoners at the minimum security Metropolitan Correctional Center in New York City raised issues related to overcrowding, challenging a

policy change that required them to share cells with other inmates on a short-term basis. 441 U.S. at 523-34. The Supreme Court held that a court facing such a claim must decide whether the particular restriction or condition is imposed for the purpose of punishment or whether it is "but an incident of some other legitimate governmental purpose." Id. at 538 (citations omitted). Weighing the pretrial detainees' rights against the interests of the facility, the Court stated,

> [i]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment.

The Court held that no intent to punish the pretrial detainees was demonstrated, particularly as the facility administrators maintained that the policy change was a short-term measure to deal with an increase in prison capacity. Id. at 541.

In Rhodes v. Chapman, 452 U.S. 337 (1981), two inmates at the Southern Ohio Correctional Facility challenged the facility's long-term double bunking policy under the Eighth and Fourteenth Amendments. The inmates argued that, unlike Bell, the double-bunking was long-term, and that physical and mental injury would be sustained through such close contact and limited space for movement. Plaintiffs sought an injunction barring the prison facility from housing more than one inmate in a cell, except as a temporary measure. Id. at 340. The Supreme Court, however, held that such long-term double-bunking was not cruel or unusual, nor was it per se unconstitutional. The Court further held that "when the conditions of confinement compose the punishment at issue," those conditions "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." Id. at 347. Considering all the factors, the Court in Rhodes found no evidence showing that Ohio authorities were wantonly inflicting pain nor did the conditions, considered in their totality, constitute a serious need deprivation. Id. at 352.

Relying upon <u>Rhodes</u>, the Eighth Circuit addressed the same issue in <u>Cody v. Hillard</u>, 830 F.2d 912, 916 (8th Cir. 1987), a class action brought by inmates alleging overcrowding. The inmates filing suit sought to cease the practice of double-bunking at the South Dakota State Penitentiary, both in the general population and the protective custody population. The Eighth Circuit held that the practice was not cruel and unusual punishment as it did not lead to deprivations of essential food, medical care or sanitation, or increase violence among inmates or create conditions intolerable for prison confinement. <u>Id.</u> at 914. In addition, the Eighth Circuit noted that the prison administration had taken various steps to reduce the negative impact of double-bunking. <u>Id.</u> The Eighth Circuit's conclusions regarding the constitutionality of double-bunking applied equally to persons housed in the protective custody area of the facility. <u>Id.</u> at 915-16.

Here, Plaintiff challenges MSOP's practice of double-bunking, a practice held constitutional by the Supreme Court in <u>Bell</u> and <u>Rhodes</u> and by the Eighth Circuit in <u>Cody</u>. Those decisions hold that requiring two inmates or detainees to share a room does not constitute cruel and unusual punishment. While <u>Rhodes</u> and <u>Cody</u> reached that conclusion under the Eighth Amendment, the Court in <u>Bell</u> also held that there was no due process violation in confining inmates in a room originally meant for single occupancy.

In this instance, there is no evidence that the double-bunking practice utilized by the MSOP is punitive. Rather, the MSOP had a legitimate purpose in seeking the waivers to permit double-bunking. The MSOP sought to temporarily accommodate a rapidly increasing population while building the first of two new facilities. (Complaint ¶ 11, Carlson Aff. ¶¶ 4-8.) Moreover, as in <u>Cody</u>, the administration at MSOP has taken steps to reduce the negative impact of double-bunking by taking care in the assignment of roommates. (Carlson Aff. ¶ 21.) Although Plaintiff

feels uncomfortable sharing a room with another sex offender, MSOP permitted him to request a particular roommate and the threat of harm is purely speculative. That Plaintiff occasionally must smell "foul odors" caused by his roommate's use of the toilet or musty towels, or that due to reasons of personal privacy, he chooses not to use the in-room toilet, or that the common bathrooms are not as clean or modern as he would like, does not rise to the level of a constitutional violation.

In considering whether the implementation of an institution's policy violates due process, the Supreme Court has held that punishment of a civilly committed patient violates due process rights where the court determines that the institution or officials did not exercise professional judgment. Youngberg, 457 U.S. at 321. Liability is imposed where the decision made by the professional is such a "substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323.

There is no indication of any kind of departure from accepted professional judgment here. To the contrary, when faced with space constraints and security concerns, Defendants implemented a policy to account for a temporary situation. Defendants acted within the state regulatory framework by stating the reasons for seeking waivers and/or granting the waivers. (See Carlson Aff. & Carlson Aff. Ex. 1-5.) Finding no substantive due process violations, the Court recommends the dismissal of Plaintiffs' due process claims.

To the extent that Plaintiff's claims implicate procedural due process, a procedural due process claim is reviewed in two steps. Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006). First, the court inquires into whether the plaintiff was deprived of a protected liberty or property interest. Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 445-46 (8th Cir.

1995). A protected liberty interest may arise from either the Due Process Clause itself or state laws. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). If the plaintiff does have a protected interest, the court then considers what process is due by balancing the specific interest that was affected, the likelihood that the applicable procedures would result in an erroneous deprivation and the affected program's interest in providing the process that it did, including the administrative costs and burdens of providing additional process. Senty-Haugen, 462 F.3d at 886 (citing Mathews v. Eldridge, 424 U.S. 319, 332-35 (1976)).

The Eighth Circuit has also recognized that the liberty and property interests of persons committed to state custody as dangerous persons are "considerably less than those held by members of free society." Senty-Haugen, 462 F.3d at 886. Moreover, while state statutes and regulations may give rise to constitutionally required procedural protections in certain circumstances, they "cannot dictate what procedural protections must attend a liberty interest – even a state created one." Swipies v. Kofka, 419 F.3d 709, 716 (8th Cir. 2005). Rather, due process requirements are flexible and specific to each particular situation. Senty-Haugen, 462 F.3d at 888 (citations omitted). "The most important mechanisms for ensuring that due process has been provided are 'notice of the factual basis' leading to a deprivation and 'a fair opportunity for rebuttal.'" Id. (citing Wilkinson v. Austin, 545 U.S. 209 (2005)).

No federal, state or local statute creates a property right for Plaintiff to possess unlimited amounts of personal property or to have unrestricted access to computers and telephones. See Anstey v. Davis, 509 S.E.2d 579, 586 (W.Va. 1998) (holding that prisoners have no constitutional right to possess personal computers in their cells and removal of computers from cells did not constitute a taking); Sands v. Lewis, 886 F.2d 1166 (9th Cir. 1989) (holding no First Amendment right to memory typewriters). This Court has previously held that persons civilly

committed to the MSOP do not have a protected due process property interest in 20-inch television sets, which were prohibited at MSOP. Beaulieu v. Ludeman, 07-CV-1535 (JMR/JSM), 2008 WL 2498241 at *16 (D. Minn. June 18, 2008).

Furthermore, as reflected in the Carlson Affidavit, the restrictions at issue were implemented in response to the MSOP's need for additional bed space. Due to the growth of the MSOP which led to the waiver requests, the MSOP requested accommodations in, for instance, the ratio of bathtubs/showers to residents (Carlson Aff. ¶ 13) and access to the use of non-coin operated telephones (id. ¶ 4). In approving the waivers, Mr. Carlson contends, "MDH took into account that patients do not spend a significant amount of awake time in their bedrooms, that the Program provides adequate commons space to offset the decrease in usable floor space in bedrooms, and that toilets, bathtubs and showers used by patients provide for individual privacy unless specifically contraindicated by Program needs." (Carlson Aff. ¶ 20.) In terms of roommate assignments, MSOP vouched to "take great care and precautions in assigning people to the double rooms, given the predatory and dangerous behavior of persons in the Program." (Carlson Aff. ¶ 21.) In sum, the complained-of limitations and restrictions were neither arbitrary, nor punitive, but instead were implemented in order to address space constraints, while furthering the legitimate goals of maintaining a safe and therapeutic environment.

While Plaintiff alleges that he spends between 13-15 hours a day in his room and anticipates that this might increase in the future (Complaint ¶ 12), he also acknowledges that he is only required to be locked in his room from 9:45 p.m. to 6:15 a.m. for purposes of sleeping. (Id.) Although Plaintiff anticipates a reduction in activities due to MSOP's growing population, he acknowledges that MSOP provides recreation time, multi-purpose room time and craft room time. (Id.) While complaining of a high demand for their use, Plaintiff also acknowledges that

laundry facilities, showers, a tub room, day area space, two telephones, two unit computers and a unit television set are all available. (Complaint ¶ 15.) Similarly, in his room, Plaintiff may possess an electric shaver, television, fan, DVD player and lamp, although he complains of a shortage of electrical outlets. (Id.)

The Court thus concludes that Plaintiff has not alleged a constitutionally-recognized property interest in the continued possession of unrestricted personal property and immediate access to shared facilities such as showers, day area, telephones and computers sufficient to meet the threshold requirement of a deprivation of property interest. Having failed to establish that preliminary requirement, the Court need not consider what process would be due had Plaintiff established a recognized property interest. The Court recommends the dismissal with prejudice of Plaintiff's procedural due process claims involving restricted property usage and limitations on access to shared spaces.

### 2. Fifth Amendment Due Process Rights

Plaintiff also alleges due process violations under the Fifth Amendment. The Fifth Amendment's Due Process Clause applies only to actions taken by the federal government. Junior Chamber of Commerce of Kansas City v. Missouri State Junior Chamber of Commerce, 508 F.2d 1031 (8th Cir.1975) (holding that there must be a finding of federal action before there is any deprivation of due process in violation of the Fifth Amendment); Serna v. Goodno, 04-CV-615 (JMR/SRN), 2005 WL 1324090 at *5 (D. Minn. June 3, 2005) (holding that the Due Process Clause of the Fifth Amendment applies to actions of the federal government, while the Fourteenth Amendment applies to actions of the states); see also, Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000) (finding that the Fifth Amendment applies only to violations of constitutional rights by United States or federal actor). Because there is no federal action in this case, the Fifth

Amendment is not implicated.

### 3. Equal Protection

The Fourteenth Amendment entitles people to equal protection under the law. <u>See</u> U.S. Const. Amend. XIV. Plaintiff maintains that the policies and procedures created to accommodate the MSOP population growth mirror that of prison policies and procedures and, in some instances, are worse than that of a prison environment. (Complaint ¶ 25.) Plaintiff alleges "that he is subject to conditions more restrictive than those placed on other civil commitment detainees, and in some areas, conditions more restrictive than those placed on prison inmates." (<u>Id.</u>) In furtherance of his allegation, Plaintiff alleges that the MSOP relies upon former DOC officials and employees to fill many high-level positions within the MSOP. (<u>Id.</u>) He specifically alleges that the 9:45 curfew imposed in his housing area is different from that imposed at the MSOP Moose Lake Annex and that patients in the Annex are not "forced to use a bathroom in a room with another sex offender." (Complaint ¶ 28.)

In order to prevail on an equal protection claim, Plaintiffs must demonstrate that persons who are similarly situated are treated differently by Defendants and that Defendants fail to provide a rational basis for this differing treatment. <u>See</u> <u>Moreland v. United States</u>, 968 F.2d 655, 660 (8th Cir. 1992); <u>Beaulieu</u>, 2008 WL 2498241 at * 12 ("Absent a threshold showing that plaintiffs are similarly situated to those who allegedly receive favorable treatment, plaintiffs do not have a viable equal protection claim.") Once it has been demonstrated that the parties are similarly situated, if the alleged action does not infringe a fundamental right or apply to a suspect classification, the court applies a rational basis review. <u>Gavin v. Branstad</u>, 122 F.3d 1081, 1090 (8th Cir. 1997). Under rational basis review, the action or law will meet constitutional standards if the dissimilar treatment is "rationally related to a legitimate state interest." <u>City of Cleburne v. Cleburne Living Center</u>, 473

U.S. 432, 440 (1985).

As to the first requirement that Plaintiff must demonstrate different treatment from others who are similarly situated, this Court has held that detainees at one facility or unit are not considered similarly-situated to detainees at other facilities or units for equal protection purposes. <u>Beaulieu</u>, 2008 WL 2498241 at * 13; <u>Jackson v. Wengler</u>, 07-CV-3587 (JRT/FLN), 2007 WL 3275102 at *6 (D. Minn. Nov. 2, 2007). As Defendants have noted, civilly committed sex offenders "are not similarly situated to other civilly committed individuals housed in different [Minnesota] facilities." (Defs.' Mem. Supp. J. Pleadings at 13) (citing <u>Beaulieu</u>, 2008 WL 2498241 at * 13.) Plaintiff's allegation that the MSOP has hired high-level staff with previous DOC experience is not germane to the equal protection analysis which requires a threshold showing of differential treatment. Following this Court's precedent, Plaintiff may not be considered similarly-situated to detainees at other facilities or units for equal protection purposes.

To the extent that Plaintiff claims to be treated differently from patients housed in the MSOP Annex, the Court considers whether Defendants have a rational basis for the alleged differential treatment. In this case, Plaintiff alleges that the Annex patients do not have a 9:45 curfew and do not have to use an in-room toilet. To the extent that MSOP treats Plaintiff differently from patients in their Annex, the Court finds a rational basis for such treatment. Many of the MSOP main building rooms were converted to double occupancy as a result of the population increase and the need to secure additional space while awaiting the opening of the new facility. (Complaint ¶ 11.) The Carlson Affidavit notes that in May 2008, staff anticipated that the MSOP's secure bed capacity would be full by the end of August 2008. (Carlson Aff. ¶ 5.) "[T]he program will need the temporary double-bunking at the main building to enable MSOP to accommodate the continued growth until the facility expansion is complete." (Letter of May 13, 2009 from B. Shaw, MSOP

Compliance Officer, to L. Tallaksen, Health Security Evaluation Supervisor, DHS, Ex. 2 to Carlson Aff.) In light of the increased need for security and toilet access caused by the burgeoning MSOP population, the Court finds that an earlier curfew time and the provision of in-room toilets in the main building are rationally related to Defendants' interest in accommodating the increased population and maintaining a safe environment. Because Plaintiff is not similarly situated to other persons housed in different facilities, and any differential treatment between MSOP patients housed in the Annex versus the main building is rationally related to a legitimate state interest, his equal protection claim fails. The Court recommends its dismissal with prejudice.

### 4. Eighth Amendment

Plaintiff alleges violations of the Eighth Amendment relating to MSOP's double-bunking practices and conditions of overcrowding. The Eighth Amendment applies only to persons who are in custody as punishment for a criminal conviction. The Eighth Circuit has noted that "because an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply." Revels v. Vincenz, 382 F.3d 870, 874 (8th Cir.2004) ("because an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply.") This Court has likewise applied the Eighth Circuit's decision in Revels, holding that the Eighth Amendment does not apply to civilly committed persons at the St. Peter Regional Treatment Center and the MSOP Moose Lake facility. Rousseau v. Casteneda, 08-CV-236 (DSD/JSM), 2008 WL 920448 at *2 (D. Minn. April 3, 2008); Serna, 04-CV-615 (JMR/SRN), 2005 WL 1324090 at *5 (D. Minn. June 3, 2005), adopted, 04-CV-615 (JMR/SRN), 2005 WL 1705623 (D. Minn. July 7, 2005), aff'd, 567 F.3d 944 (8th Cir. 2009). Accordingly, the Court recommends that, with respect to Plaintiff's Eighth Amendment cruel and

unusual punishment claims, Defendants' Motion for Judgment on the Pleadings be granted and Plaintiff's claims be dismissed.

### 5. Remaining Claims

The party invoking federal jurisdiction bears the burden of establishing the elements of standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). To have standing, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to speculative, that the injury will be redressed by a favorable decision. Id. at 560-61. Defendants seek the dismissal of several of Plaintiff's allegations on the additional grounds that they do not allege an injury in fact, but are merely speculative.

Plaintiff argues that merely because an injury is speculative, it should not be grounds for dismissal, as "future harm speculation was the basis of [Plaintiff's] civil commitment. It was a valid enough reasoning to commit the Plaintiff, and therefore, it should be valid enough to warrant a show of harm warranting relief...." (Pl.'s Mem. Opp'n Defs.' Mot. J. Pleadings at 6.) While Plaintiff makes an interesting argument, it overlooks the standard which courts are required to apply in two very different legal contexts. In the proceeding before this Court, a plaintiff must demonstrate an actual, non-speculative injury-in-fact in order to invoke federal jurisdiction. The applicable standard in a civil commitment proceeding in state court is not before this Court.

In Paragraph 9 of the Complaint, Plaintiff acknowledges that although he was allowed to choose his roommate, he alleges that sharing a room with a civilly committed sex offender jeopardizes his safety and well-being. (Complaint ¶ 9.) He does not, however, allege that he has been injured nor does he describe any conduct on the part of his roommate that is likely to result in injury. Plaintiff fails to state a legally cognizable claim under Lujan .

In Paragraph 12 of the Complaint, Plaintiff alleges that he anticipates an increase in the amount of time he will spend in his room. Specifically, he alleges that the MSOP will decrease work hours, is considering a decrease in recreation time and implementing "controlled movement," which will increase the time spent in Plaintiff's living unit. Because all of these claims are speculative, Plaintiff fails to state a legally cognizable claim.

In Paragraph 13 of the Complaint, Plaintiff alleges that laundry is processed in a Minnesota prison facility; that Defendant Benson is "involved with" a company called MINNCOR and that the DOC uses MINNCOR to employ prison inmates. (Complaint ¶ 13.) Plaintiff fails to state any violation of constitutional rights with respect to these facts.

In Paragraph 19 of the Complaint, Plaintiff alleges that he is unable to sleep properly for "fear that he could be sexually or physically assaulted if he falls asleep." He also alleges that almost all sleep aids have been taken away from patients, as well as medications for acid reflux. (Complaint ¶ 19.) Plaintiff does not allege that any of these medications were taken away from him personally or that he was treated for underlying conditions that such medications might alleviate. His concern of sexual or physical assault is speculative. Accordingly, Plaintiff fails to state a legally cognizable claim with respect to these allegations.

In Paragraphs 24 and 26 of the Complaint, Plaintiff alleges only broad legal statements or public policy concerns ( that he is subjected to unconstitutional overcrowding and that Minnesota's economic concerns are not a permissible justification for its policies toward the MSOP population). (Complaint ¶¶ 24, 26.) He does not support these allegations with any specific facts, and, accordingly, these claims should be dismissed.

In Paragraph 33 of the Complaint, Plaintiff alleges the implementation of a "use of force squad," but does not allege that he has been subjected to the use of force by this squad. (Complaint

¶ 33.) In Paragraph 34, Plaintiff alleges that if he were to refuse double-bunking, he would be placed in protective isolation, "by force, if necessary." (Complaint ¶ 34.) Plaintiff does not allege actual harm with respect to these claims, therefore, they should be dismissed.

In Paragraph 37 of the Complaint, Plaintiff alleges that he filed his Complaint "with the fear of retaliation by the MSOP." (Complaint ¶ 37.) A Plaintiff claiming retaliation for the exercise of his or her constitutional rights must prove that, but for the exercise of the constitutional rights, the action would not have taken place and that the driving force behind the action was, in fact, retaliation. <u>Senty-Haugen v. Goodno</u>, 462 F.3d 876, 890-91 (8th Cir. 2006). Here, Plaintiff does not allege that retaliatory action has occurred. This claim should be dismissed.

In Paragraph 39 of the Complaint, Plaintiff alleges that Defendants have violated his constitutional rights to adequate living space by seeking and obtaining the rule waivers to permit double-bunking. This Court has addressed the constitutionality of double-bunking in its analysis of Plaintiff's due process claims under the Fourteenth Amendment, but the Court additionally notes here that Plaintiff's claim that he possesses a constitutional right to adequate living space is without legal basis. The rules governing supervised living facilities' space are subject to waiver. Minn. R. 4665.0600 (providing, "A supervised living facility may request in writing a waiver of a specific rule.") The Carlson Affidavit and exhibits attached thereto make clear that Defendants cited the applicable rules and reasons for seeking a waiver and that the waivers were granted. (<u>See</u> Carlson Aff. & Carlson Aff. Exs. 1-5.) Plaintiff's claim should be dismissed.

## C. Qualified Immunity

Defendants claim that they are entitled to qualified immunity from suit. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001) (citation omitted). Rather than a mere defense to liability, qualified immunity

is an immunity from suit.  Id.  When a plaintiff claims that an officer has violated a constitutional right, "the requisites of a qualified immunity defense must be considered in proper sequence."  Id.  Viewed in the light most favorable to the party asserting injury, the threshold question is whether the alleged facts show that the officer's conduct violated a constitutional right.  Id. at 201.  If no constitutional right would have been violated were the allegations established, then qualified immunity is established.  If, however, the facts support a constitutional violation, the next sequential step is to ask whether the right was clearly established.  Id.  This inquiry is fact-specific:  "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id.  Here, as discussed above, Defendants did not violate Plaintiff's rights.  Defendants are entitled to qualified immunity.

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

Defendant's Motion for Judgment on the Pleadings (Doc. No. 23) be **GRANTED.**


Dated: December 14, 2009

s/Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **December 29, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.